25 per cent. was to be paid out of the amount due on the last payment to Mertz & Gibb when the plastering work was finished, and as no last payment ever became due to Mertz & Gibb, they never having finished the plastering work, nothing was due to the plaintiff.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.

---

(92 App. Div. 1.)

### In re LONG ISLAND LOAN & TRUST CO.

### .. Appeal of SLOAN.

(Supreme Court, Appellate Division, Second Department.    March 18, 1904.)

1. TRUST—SALE OF TRUSTEE'S PROPERTY TO TRUST—PUBLIC POLICY.
    The sale by a trustee of its own property to the trust is void as against public policy.

2. SAME—ESTOPPEL OF BENEFICIARY—NOTICE.
    The entry, "February 1, 1893, L. I. L. & T. Co., T. Donohue Mtge. No. 3, $7,800," in a report of a trustee to a beneficiary, was insufficient to give notice that the trustee had sold the mortgage, which previously belonged to it, to the trust, so as to form the basis of an estoppel of the beneficiary from questioning the invalidity of the act.

3. SAME—DECREE IN ACCOUNTING.
    A decree on a trustee's accounting does not estop the beneficiary from questioning the validity of a prior act of the trustee which was not litigated on that accounting.

4. SAME—BURDEN OF PROOF.
    Where a trustee relies on a decree in a former accounting to estop the beneficiary from questioning the validity of a sale by the trustee to the trust, the burden is on the trustee to show that the question was litigated.

5. SAME—REFUSAL TO OPEN DECREE.
    Where the validity of a sale by a trustee of its property to the trust was not litigated on an accounting, the refusal of the court to open the decree does not estop the beneficiary from questioning the validity of the trustee's act in a subsequent accounting, the opening of a decree being a matter within the discretion of the court.

Appeal from Surrogate's Court, Kings County.

Proceedings in the matter of the judicial settlement of the account of the Long Island Loan & Trust Company, as substituted trustee under a trust for the benefit of Lillie G. Sloan, created by the last will and testament of Stephen Garretson, deceased. From a decree judicially settling the accounts of the trustee, the beneficiary appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Charles D. Ridgway, for appellant.
· George S. Ingraham, for respondent.

WOODWARD, J.    Stephen Garretson, by his last will and testament, created a trust fund for the benefit of Lillie G. Sloan, and upon her death the trust fund was to be divided among her children. The Long Island Loan & Trust Company is the substituted trustee, and this appeal is from a decree. made in an intermediate accounting by

the trustee, whereby the trustee's account covering the period from June 20, 1898, to February 28, 1903, was "sustained in every respect." The life tenant objected to the account, and urged before the learned Surrogate's Court that a certain piece of real estate known as "No. 1459 Fulton Street, Brooklyn," inventoried by the trustee in its account at $9,106.61, be adjudged to be the property of the trustee, and the trustee be adjudged to repay to the trust fund the amount at which it is inventoried, with interest at 6 per cent. from the time of the foreclosure, less such income therefrom as may have been paid to the appellant.

It seems that the principal of this trust fund amounts to $28,556.63, and that when it came into the hands of the present trustee in 1889 it was all invested in bonds and mortgages. On the 4th of June, 1888, the present trustee, in pursuance of its own business, had made six mortgage loans of $8,000 each to Thomas Donohue on six four-story houses erected on lots 20 by 100 feet, situated on the southerly side of Fulton street, just east of Brooklyn avenue. With these mortgages in its possession, the executive committee of the board of trustees of the Long Island Loan & Trust Company in 1893 adopted the following resolution:

"Resolved, that in consequence of the difficulty of procuring satisfactory bonds and mortgages for the uninvested funds held by this company as trustee, etc., the following bonds and mortgages, being the property of the company, shall, after the first of February next, be held for the different trusts, as named below, viz.: Bond of T. Donohue, No. 3, amount, $7,800, for the trust of Lillie G. Sloan," etc.

There appears to have been no other transfer of this mortgage to the trust fund created for Lillie G. Sloan, and the life tenant urges with great force that, assuming this to have been a sale to the trust by the trustee, it is in violation of the public policy of this state, which forbids a trustee dealing with the trust estate both as buyer and seller. Subsequent to this resolution, which did not convey the mortgage to the trustee, and on the 7th day of August, 1894, the Long Island Loan & Trust Company began an action for the foreclosure of this mortgage in its own name, and not as a trustee. Judgment of foreclosure and sale was entered November 12, 1894, and on the 11th day of December, 1894, the mortgaged premises were sold at public auction by the sheriff of Kings county, and purchased by the Long Island Loan & Trust Company, and the same were transferred to the said company in its own right in fee simple, and not as trustee. What the life tenant demands, and what she is entitled to if she is not estopped to assert her rights, is that this piece of property shall be adjudged to belong, as it does, to the trustee, and that the trust fund shall be made good, with interest at 6 per cent., less any income which may have been paid to the life tenant. The transaction on the part of this trustee, no matter what degree of good faith may have been back of the resolution of 1893, is counter to public policy. Trustees cannot be permitted to deal with trust funds in the dual capacity of buyer and seller. It has long been settled, and upon principles which cannot be controverted, that a trustee cannot deal in his own behalf with the funds intrusted to his charge for the benefit of another. He can neither purchase the trust funds for himself nor exchange them for his own property. Acker-

man v. Emott, 4 Barb. 626, 649; Smith v. Howlett, 29 App. Div. 182, 51 N. Y. Supp. 910.

It does not appear to be seriously contended that the trustee had a right to deal with the trust fund in the manner which it is agreed was done, but it is urged that the life tenant has ratified the action of the trustee, or has been estopped by a former decree. It appears that in 1893 the trustee made a report to her, in which appears this entry: "February 1, 1893, L. I. L. & T. Co., T. Donohue Mtge. No. 3, $7,800." Just how this was calculated to give the life tenant notice of the state of facts which is now developed it is difficult to understand, and we are clearly of the opinion that it did not serve any such purpose. Where ratification on the part of a cestui que trust is set up, it must appear not only that the cestui que trust knew all of the facts, but that she had been informed of her rights under the law; that she had been told of the disposition which a court of equity would make under the known facts. Smith v. Howlett, 29 App. Div. 190, 51 N. Y. Supp. 910, citing Adair v. Brimmer, 74 N. Y. 539, 554. There was no ratification on the part of the life tenant, and we are persuaded likewise that the decree of June 21, 1898, is not a bar to this appeal.

The trustee accounted in 1898, but none of the questions here raised was put in issue in that proceeding, and the decree on that accounting discharged the trustee only as to the assets directed to be distributed thereunder and the amount of the trust estate. As the trustee claims this decree to have worked an estoppel, the burden of proof is upon the trustee to show clearly that the question in issue in this case was litigated and determined in the former action (Rudd v. Cornell, 171 N. Y. 114, 127, 63 N. E. 823, and authority there cited), and, having failed to show this, the life tenant is not estopped to assert her rights at this time. Nor is the position of the trustee changed by the fact that the life tenant made a motion in May, 1903, to open the decree of August, 1898, in which the matters here involved were set up as a reason for opening the former decree. The opening of the former decree rested in the discretion of the learned surrogate, and, as the former decree did not attempt to settle any of the questions which were urged on this motion, the denial of the motion did not affect any substantial right of the life tenant, and under well-established rules it could not work an estoppel on this accounting. Dutton v. Smith, 10 App. Div. 566, 42 N. Y. Supp. 80.

The decree should be reversed, and the life tenant should be given the relief demanded. All concur, except JENKS, J., taking no part.

---

(91 App. Div. 583.)

## STRAUSS v. NEW YORK, N. H. & H. R. CO.

(Supreme Court, Appellate Division, Second Department. March 15, 1904.)

1. DEATH BY WRONGFUL ACT—INJURY IN FOREIGN STATE—SIMILARITY OF STATUTES.

   